UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                  )
MICHAEL R. FANNING, as Chief      )
Executive Officer of the Central  )
Pension Fund of the International )
Union of Operating Engineers and  )
Participating Employers,          )
                                  )
              Plaintiff,          )
                                  )
       v.                         )    Civil Action No. 13-CV-0865(KBJ)
                                  )
C&L SERVICE CORPORATION,          )
                                  )
              Defendant.          )
                                  )
_____ )
```

## MEMORANDUM OPINION

Plaintiff Michael R. Fanning, in his official capacity as Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employees ("Plaintiff" or the "Fund"), filed this action against Defendant C&L Services Corporation ("Defendant" or "C&L"). In the complaint, Plaintiff alleges that C&L failed to pay to the Fund the proper amount of contributions owed under the governing Collective Bargaining Agreements ("CBAs") and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145. (*See* Compl. ¶¶ 13-18.) Although properly and timely served with the complaint and summons, Defendant has failed to respond to the complaint; accordingly, the Clerk of Court entered default against C&L on August 21, 2013. (*See* Entry of Default, ECF No. 5.) Before the Court is Plaintiff's motion seeking default judgment and monetary damages. (Mot. For Entry of J. By Default & to Close Case ("Pl.'s Mot."), ECF No. 7; Mem. in Support of Mot.

for Entry of J. by Default ("Pl.'s Mem."), ECF No. 7-1.) Upon consideration of Plaintiff's motion and the attachments thereto, applicable case law, statutory authority, and the record of this case as a whole, the Court **GRANTS** Plaintiff's motion.

I. **BACKGROUND**

The Fund asserts that C&L is bound through a CBA with the International Union of Operating Engineers Local 147, as well as the Fund's charter agreement and ERISA, to pay the Fund certain sums of money for each hour worked by employees of C&L performing work covered by the agreement. (Compl. ¶¶ 6-7; Decl. of Michael R. Fanning ("Fanning Decl."), Appendix to Pl.'s Mot. ("App.") 002 ¶¶ 8-9; CBA, Ex. B to Fanning Decl., App. 012-13.) Pursuant to the terms of those agreements, the Fund asserts that it is entitled to a monetary award in the amount of the unpaid contributions, liquidated damages, interest on the unpaid contributions, as well as costs, such as attorneys' fees and filing costs. (Compl. ¶¶ A-C, E; Pl.'s Mem. at 4-6.)

As explained in the Fanning Declaration, the Fund is a multi-employer employee pension benefit plan established pursuant to ERISA and maintained according to its Restated Agreement of Declaration and Trust ("Trust Agreement"). (Compl. ¶ 1; Fanning Decl. ¶¶ 4-5; Trust Agreement, Ex. A to Fanning Decl., App. 004.) The Fund provides retirement, disability, survivor, and death benefits to employees (and their beneficiaries) working as engineers in various industries throughout the United States. (Fanning Decl. ¶ 6.) Employers make contributions to the Fund pursuant to the terms of various CBAs entered into with local unions affiliated with the International Union of Operating Engineers. (*Id.* ¶ 7.) Signatory employers are required to make the contributions on the first of each month. (*Id.*) C&L is one such employer obligated to

make monthly contributions under the terms of its CBA, the Fund's Trust Agreement, and ERISA. (*Id.* ¶ 8; CBA at App. 012.)

Specifically, C&L's CBA with the local union provides that for every hour worked by an employee performing work under the agreement, C&L is obligated to pay a fixed amount of contributions to the Fund. (Fanning. Decl. ¶ 9; CBA at App. 007.) Here, the Fund alleges that C&L failed to pay the requisite contributions for a three-month period, from January 2013 through March 2013. (Fanning Decl. ¶ 12.) The Fund maintains that C&L submitted payment for the contributions owed for January 2013 by check in the amount of $5,945.45 (*id.* ¶ 11; January 2013 Contributions Calculations, Ex. C to Fanning Decl., App. 014-015), but C&L's bank dishonored the check, and C&L never provided a replacement (Fanning Decl. ¶ 11). C&L also allegedly never submitted any payment for the contributions owed for February or March 2013. (*Id.* ¶¶12-13.) Pursuant to a report that C&L prepared and sent to the Fund, C&L owes delinquent contributions in the amount of $4,338.23 for February 2013, and $4,445.10 for March 2013. (*Id.* ¶ 12; C&L Contributions Report, Ex. D to Declaration of R. Richard Hopp ("Hopp Decl."), App. 029-031; Interest/Damages Shell, Ex. D to Fanning Decl., App. 019.)[1] Thus, the total amount of unpaid contributions that the Fund seeks to recover is $14,728.78. (Pl.'s Mem. at 4; Interest/Damages Shell, App. 019.)

In addition to the unpaid contributions, the Fund also alleges that it is entitled to interest on the unpaid contributions pursuant to the Fund's Trust Agreement and

---

[1] Although C&L has not responded formally to the complaint or otherwise defended itself in this litigation, in response to the Fund's demand for an audit in Count II of the complaint, C&L did prepare reports documenting the total amount of unpaid contributions, which Barbara L. Moore of C&L sent to the Fund's attorney, R. Richard Hopp. (Pl.'s Mem. at 4; Fanning Decl. ¶ 12; Hopp Decl. ¶ 7.)

3

ERISA. (Compl. ¶ 18; Pl.'s Mem. at 5.) Plaintiff alleges that ERISA directs that interests on unpaid contributions be paid in accordance with the rate provided by the governing plan. (Pl.'s Mot. at 5 (citing 29 U.S.C. § 1132(g)(2).) Section 4.5(c) of the Fund's Trust Agreement provides for interest on unpaid contributions at a rate of 9% per year. (Trust Agreement, App. 012-013.) Applying that interest rate to the $14,728.78 of unpaid contributions that C&L allegedly owes in this case, the Fund seeks $572.43 in interest. (Fanning Decl. ¶ 14; Interest/Damages Shell, App. 019; *see also* C&L Contributions Report, App. 029-031.)

The Fund also alleges that it is entitled to liquidated damages pursuant to Section 4.5(b) of the Trust Agreement. (Compl. ¶17; Pl.'s Mem. at 5.) Plaintiff alleges that ERISA provides for liquidated damages in an amount set forth in the governing plan. (Pl.'s Mot. at 5 (citing 29 U.S.C. § 1132(g)(2)(C)(ii).) Section 4.5(b) of the Trust Agreement provides for liquidated damages to be assessed at the rate of 20%. (Trust Agreement, App. 012.) In the instant motion, however, the Fund requests a rate of only 15% of the unpaid contributions. (Pl.'s Mem. at 5.) Based on the amount of unpaid contributions that C&L reported (*see* C&L Contributions Report, App. 029-031), the Fund has calculated that liquidated damages for the periods of January through March 2013, at a rate of 15%, totals $2,209.32. (Interest/Damages Shell, App. 019; Fanning Decl. ¶ 13.)

Finally, under Section 4.5 of the Trust Agreement and ERISA § 1132(g)(2)(D) and (E), C&L is obligated to pay to the Fund all costs, audit expenses, and attorneys' fees the Trustees incurred in enforcing the parties' CBA. (Trust Agreement, App. 013.) As set forth in the Declaration of R. Richard Hopp, counsel of record for the Fund, the

4

Fund incurred legal costs in the amount of $600.00 for the filing fee and cost of service of process in this case. (Decl. of R. Richard Hopp ("Hopp Decl."), App. 021 ¶ 5; *see also* Process Serv. Invoice, Ex. B. to Hopp Decl., App. 024.) In addition, the Fund paid attorneys' fees in the amount of $1,900.00 in this case based on Mr. Hopp's 7.6 hours of work as described in his Detail of Fees. (Hopp. Decl. ¶ 4; Detail of Fees, Ex. A to Hopp Decl., App. 022.) Thus, the Fund maintains that C&L is obligated to pay a total of $2,500.00 in costs and fees. (Pl.'s Mot. at 6.)

The Fund served C&L with the complaint and summons in this case on June 13, 2013. (Return of Service/Affidavit, ECF No. 3.) When C&L failed to file an answer within the time period allotted by Federal Rule of Civil Procedure 12(a)(1)(A), this Court ordered C&L to file a responsive pleading by August 9, 2013. (*See* Minute Order of July 26, 2013.) When C&L failed to meet the Court's extended deadline, the Court offered C&L another lifeline, ordering C&L to show cause why it should not enter default judgment for the Fund. (*See* Minute Order of August 12, 2013.) C&L failed to respond yet again. (Pl.'s Mem. at 1.) C&L failed to meet the Court's show cause deadline, and on August 20, 2013, the Fund requested an entry of default and served C&L with both a copy of the affidavit for default (Request for Clerk's Entry of Default, ECF No. 4, ¶ 4) and an emailed copy of the Court's minute orders (Hopp Decl. ¶ 6). The following day, the Clerk of the Court entered the default. (Entry of Default, ECF No. 5.)

The Fund has now filed the instant motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (Pl.'s Mot.)[2] The Fund's attorney, Mr.

---

[2] Rule 55 sets out a two-step process for a party seeking to obtain a default judgment. First, a plaintiff must ask that the Clerk of the Court enter default against "a party against whom a judgment for

5

Hopp, has been in touch with Barbara L. Moore, a representative of C&L. (Hopp. Decl. ¶ 6.) According to Mr. Hopp, Ms. Moore indicated that "she and C&L were aware of the [pending] default and that [she] had consulted with her attorney." (Hopp. Decl. ¶ 6.) Mr. Hopp stated that he has had "many communications" with Ms. Moore and has advised her repeatedly of the Fund's intent to seek default judgment. (*Id.*; *see also* Hopp & Moore Emails, Ex. C. to Hopp. Decl., App. 025-028.) Indeed, it is Ms. Moore who provided C&L's reports identifying the amount of contributions due. (Hopp. Decl. ¶ 7.) Nevertheless, C&L has failed to submit any pleadings or otherwise defend itself against this action as of the date of this order.

**II. Legal Standard**

"A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 66-67 (D.D.C. 2011) (citing *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980)). Federal Rule of Civil Procedure 55(a) provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a). Once the Clerk enters default, Rule 55 authorizes the court to enter default judgment for the amount claimed and for costs. Fed. R. Civ. P. 55(b)(2). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied*

---

affirmative relief is sought [which] has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Second, if the plaintiff's claim is not for a "sum certain," the plaintiff must apply to the court for a default judgment. *Id.* 55(b)(1)-(2). "This two-step process gives a defendant an opportunity to move to set aside a default before the court enters judgment." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 66 n.1 (D.D.C. 2011) (citing Fed. R. Civ. P. 55(c) and *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

*Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). "Because courts strongly favor resolution of disputes on their merits, and because it seems inherently unfair to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgment[, which] . . . usually is available only when the adversary process has been halted because of an essentially unresponsive party . . . ." *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67 (internal quotation marks omitted) (quoting *Jackson*, 636 F.2d at 835).

Entry of default by the Clerk of Court establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67; *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). However, "[t]he court has considerable latitude in determining the amount of damages." *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67 (citation omitted). "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Fanning v. Permanent Solution Indus.*, 257 F.R.D. 4, 7 (D.D.C. 2009) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)). "Accordingly, when moving for default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested" using "detailed affidavits or documentary evidence" on which the court may rely. *Permanent Solution Indus.*, 256 F.R.D. at 7 (citing *Amrine Drywall*, 239 F. Supp. 2d at 30). The court may conduct a hearing regarding the scope of damages, Fed. R. Civ. P. 55(b)(2), but is not required to "as long as it ensure[s] that there [is] a basis for the

damages specified in the default judgment," *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67 (quoting *Transatlantic Mar. Claims Agency, Inc. v. Ace Shipping Corp. Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).

### III. Analysis

"Where, as here, there is a complete absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Permanent Solution Indus.*, 257 F.R.D. at 7 (internal quotation marks and citation omitted). As noted above, C&L has failed to respond to the complaint and to this Court's multiple orders. Moreover, based on the affidavits supported the uncontested motion for default, the Court finds that the Fund's attorney has been communicating with a representative of C&L, who acknowledged C&L's awareness of this litigation, including the instant default motion. (*See* Hopp. Decl. ¶ 6.) Given the defendant's unresponsiveness—especially in light of C&L's reported recognition of this action and its knowledge of the possibility of default judgment—the court concludes that default judgment is appropriate. *See Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68 (concluding that the defendant was liable to the plaintiff because the defendant had failed to respond to the complaint or otherwise defend itself); *Permanent Solution Indus.*, 257 F.R.D. at 7 (same).

As a result of the entry of default, this Court adopts the well-pleaded allegations in the complaint as findings of fact regarding this matter. *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68; *Permanent Solution Indus.*, 257 F.R.D. at 7; *Amrine Drywall*, 239 F. Supp. 2d at 30 (citation omitted). The Plaintiff asserts, and this Court concludes, that C&L violated the CBA and ERISA by failing to make monthly contributions to the

Fund from January through March 2013. (*See* Pl.'s Mem. at 4.) Accordingly, the Fund is entitled to default judgment as to C&L's liability for its failure to make timely contributions to the Fund pursuant to the CBA.

With liability established, the Court now must make an independent determination of the amount of damages due. *See Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68; *Permanent Solution Indus.*, 257 F.R.D. at 7; *Adkins*, 180 F. Supp. 2d at 17. Pursuant to the Fund's Trust Agreement, C&L is obligated to pay (1) the total amount of outstanding unpaid contributions; (2) interest on the unpaid contributions at a 9% rate; (3) liquidated damages in an amount up to 20% of the amount past due; and (4) related legal costs and fees. (Trust Agreement, App. 008-009.) ERISA echoes these requirements. *See* 29 U.S.C. § 1132(g) (noting that employers are obligated to pay unpaid contributions, interest according to governing agreements, liquidated damages at a rate of 20% or as determined by governing agreements, legal costs and fees, as well as other such relief).

In support of its motion for default judgment, the Fund has provided the declarations of Fanning, the Chief Executive of the Fund, and Hopp, counsel for the Fund. Fanning's declaration details the amount of unpaid contributions, interest, and liquidated damages that C&L owes, based in large part on C&L's own calculations. (*See* Fanning Decl. ¶ 12; C&L Contributions Report, App. 019.) Hopp's declaration similarly details the legal costs and attorneys' fees that the Fund incurred as a result of its effort to recover the unpaid contributions. (*See* Hopp. Decl. ¶¶ 4-5.) Relying on the declarations and materials attached thereto to calculate the appropriate damages amount in this case, *see Permanent Solution Indus.*, 256 F.R.D. at 7; *Amrine Drywall*, 239

9

F. Supp. 2d at 30, the Court finds that the Fund has established damages in the amount of: $14,728.78 in unpaid contributions for January through March 2013; $572.43 in interest on the unpaid contributions at a rate of 9% per annum for the time period of January 2013 through August 2013; $2209.32 in liquidated damages at a rate of 15% of the unpaid contributions; $600 in legal costs and $1,900.00 in attorneys' fees for a total of $2,500.00 in costs and fees.

Therefore, pursuant to the terms of the Trust Agreement and 29 U.S.C. § 1132(g)(2), the Court finds that the Fund is entitled to a monetary judgment in the amount of **$20,010.53**.

## IV. Conclusion

For the reasons described above, the Court **GRANTS** Plaintiff's motion for default judgment (ECF No. 7) and will enter a judgment awarding the Fund $20,010.53. A separate order will follow.

Date: September 13, 2013                    *Ketanji Brown Jackson*
                                            KETANJI BROWN JACKSON
                                            United States District Judge